# 2016-1381

### In The
# United States Court Of Appeals
# For The Federal Circuit

## CDX DIAGNOSTICS, INC.,
*Appellant,*

v.

## U.S. ENDOSCOPY GROUP, INC.,
*Appellee.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD IN NO. IPR2014-00642

––––––––––––––––––––––––

## BRIEF OF APPELLEE

––––––––––––––––––––––––

Todd R. Tucker
Mark W. McDougall
Joshua A. Friedman
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
(216) 622-8200 – Telephone
(216) 241-0816 – Facsimile
ttucker@calfee.com
mmcdougall@calfee.com
jfriedman@calfee.com

*Dated: April 28, 2016*                *Counsel for Appellee*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for United States Endoscopy Group, Inc. ("U.S. Endoscopy")

certifies the following:

1.    The full name of every party or amicus represented by me is: United

States Endoscopy Group, Inc.

2.    The name of the real party in interest (if the party named in the

caption is not the real party in interest represented by me is: N/A.

3.    All parent corporations and publicly held companies that own 10

percent or more of the stock of the party or amicus curiae represented

by me are: STERIS plc.

4.    The names of the all law firms and the partners or associates that

appeared for the party or amicus now represented by me in the trial

court or agency or are expected to appear in this court are:

Calfee, Halter & Griswold LLP: Todd R. Tucker, Mark W.

McDougall and Joshua A. Friedman.


Dated: April 28, 2016                         /s/ Todd R. Tucker
                                              Todd R. Tucker

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................. i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ..................................................................... v

STATEMENT OF RELATED CASES ................................................... viii

STATEMENT OF JURISDICTION.......................................................... 1

STATEMENT OF THE ISSUES............................................................... 2

STATEMENT OF THE CASE................................................................... 4

    A.    Introduction ......................................................................... 4

    B.    Counterstatement of Facts ................................................. 8

        1.    The '044 Patent ...................................................... 8

        2.    The Parasher Prior Art Reference ........................ 11

        3.    CDx's Expert Testifies that Parasher Discloses the
Contested Elements of the '044 Patent—And CDx Seeks
to Disavow This Testimony ................................... 13

        4.    The Board's Findings on the '044 Patent.............. 15

            a.    The Board's Findings on Parasher ................ 15

            b.    The Board's Factual Findings Concerning Dr.
Fromowitz's Testimony................................. 17

            c.    CDx Failed to Contest "Sufficient Stiffness" in the
IPR .............................................................. 18

            d.    The Board's Claim-by-Claim Rulings........... 19

        5.    The Board's Findings in the IPR Proceedings on the '609
and '913 Patents. ................................................. 20

SUMMARY OF THE ARGUMENT ..................................................... 23

ARGUMENT ................................................................................... 26

    A.    Standard of Review ................................................................ 26

    B.    Parasher Teaches the Claimed Elements of the '044 Patent ........... 27

        1.    Parasher's Teachings Render the Claims Under Review Unpatentable ............................................................ 27

        2.    CDx's Expert Dr. Fromowitz Confirms Parasher's Teachings ........................................................................ 30

        3.    The Board Did Not Rely on Inherency to Invalidate the '044 Patent ................................................................ 32

        4.    The Board's Claim-By-Claim Analysis Was Correct ............. 33

    C.    CDx's New "Sufficient Stiffness" Argument Was Waived ............ 35

    D.    CDx's Erroneous Arguments On Appeal Fail To Carry The Day ................................................................................... 38

        1.    Parasher's Background Section Is Still Part of Its Disclosure .......................................................... 38

        2.    The Board's Final Judgment Need Not Be a Carbon Copy of Its Decision to Institute ............................ 40

        3.    The Board's Other IPR Decisions Only Confirm Unpatentability ...................................................... 41

    E.    CDx Is Barred Under Doctrine of Collateral Estoppel From Challenging the Board's Factual Findings About Parasher and Dr. Fromowitz's Testimony ........................................... 43

        1.    Summary of Law on Collateral Estoppel ................................ 43

        2.    The Scope and Meaning of the Prior Art Disclosures in Parasher and the Application of Dr. Fromowitz's Testimony to those Disclosures Were at Issue and Were Litigated in All Three IPRs ....................................... 45

3.  The Scope of Parasher and Fromowitz's Testimony Was Fully Litigated.......................................................... 47

4.  The Meaning of Parasher and Dr. Fromowitz's Testimony Were Central Issues in the IPRs on the '609 and '044 Patents ...................................................... 48

5.  CDx Chose Not Appeal the '609 and '913 IPRs .................... 48

6.  The Balance Of Factors Weighs In Favor Of Applying the Collateral Estoppel Doctrine............................................. 49

CONCLUSION................................................................................... 51

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*B&B Hardware, Inc. v. Hargis Indus.*,
    135 S. Ct. 1293 (2015)..............................................................................44, 47

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001) ....................................................32

*Connell v. Sears, Roebuck & Co.*,
    722 F.2d 1542 (Fed. Cir. 1983) ....................................................26

*Cont'l Can Co. v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991) ....................................................32

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    Nos. 2015-1498, 2015-1503, 2016 U.S. App. LEXIS 3431
    (Fed. Cir. Feb. 26 2016) ....................................................35, 36, 37

*In re Adler*,
    723 F.3d 1322 (Fed. Cir. 2013) ....................................................26

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*,
    536 F.3d 1343 (Fed. Cir. 2008) ............................................49, 50

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994) ..................................43, 44, 45, 49

*In re Gartside*,
    203 F.3d 1305 (Fed. Cir. 2000) ............................................26, 35

*In re Morsa*,
    713 F.3d 104 (Fed. Cir. 2013) ....................................................26

*In re Schreiber*,
    128 F.3d 1473 (Fed. Cir. 1997) ......................................6, 29, 33

*In re Watts*,
    354 F.3d 1362 (Fed. Cir. 2002) ....................................................35

*Innovad, Inc. v. Microsoft Corp.*,
   260 F.3d 1326 (Fed. Cir. 2001) ...............................................49, 50

*Kensey Nash Corp. v. Perclose, Inc.*,
   57 Fed. App'x 864 (Fed. Cir. 2003) .................................... 38-39

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)..............................................................26

*Medinol Ltd. v. Guidant Corp.*,
   341 F. Supp. 2d 301 (S.D.N.Y. 2004) ....................................45

*Merck & Cie v. Gnosis S.P.A.*,
   No. 2014-1779, 2016 U.S. App. LEXIS 7503
   (Fed. Cir. Apr. 26, 2016) ................................................26

*Orenshteyn v. IBM*,
   979 F. Supp. 2d 448 (S.D.N.Y. 2013) ................................44, 45

*Randall Mfg. v. Rea*,
   733 F.3d 1355 (Fed. Cir. 2013) ....................................26

*U.S. Endoscopy Group, Inc. v. CDx Diagnostics, Inc.*,
   IPR2014-00642, Paper No. 25 (P.T.A.B. Oct. 15, 2015).............................4

*Westwood Chem., Inc. v. United States*,
   525 F.2d 1367 (Ct. Cl. 1975)........................................45

**Statutes and Regulations:**

35 U.S.C. § 6................................................................ 44

35 U.S.C. § 102(a) ...........................................................26

35 U.S.C. § 103 ..............................................................26

35 U.S.C. § 314(d) .......................................................... 40

35 U.S.C. § 316..............................................................40

37 C.F.R. Part 42 .......................................................... 44

37 C.F.R. § 42.23 ..................................................................................6

37 C.F.R. § 42.23(a) ...........................................................................16

37 C.F.R. § 42.51 ............................................................................. 44

37 C.F.R. § 42.62 ............................................................................. 44

37 C.F.R. § 421.08(c) ....................................................................... 40

**Legislative History:**

157 Cong. Rec. S5370
    (daily ed. Sept. 7, 2011) (statement of Sen. Kyle) .......................... 44

## **STATEMENT OF RELATED CASES**

CDx's statement of related cases is accurate to U.S. Endoscopy's understanding.

## **STATEMENT OF JURISDICTION**

CDx's statement of jurisdiction is accurate to U.S. Endoscopy's understanding.

## **STATEMENT OF THE ISSUES**

CDx's statement of the issues is inaccurate for several reasons. The Board found that U.S. Patent No. 5,535,756 to Parasher ("Parasher") expressly discloses a brush capable of penetrating the epithelium and into the submucosa, which CDx's expert confirmed on cross-examination. (A790 ll. 6–12; A791 ll. 13–18; A794 ll. 5–16; A794 l. 24–A795 l. 4; A571 col. 2 ll. 20–25, col. 3 l. 27.) Specifically, the Board found that "[t]his evidence suggests that Parasher's brush not only is capable of dislodging cells from below the surface of the epithelium, but is also capable of penetrating to the submucosa." (A89.) According to the Board, this question was the only issue that CDx contested in the IPR. (A84.) The Board found substantial evidence that Parasher disclosed this sole contested aspect of the claims.

The issues when stated accurately are:

1)    Whether substantial evidence supports the Board's finding that Parasher discloses a brush capable of dislodging cells from below the surface of the epithelium in order to penetrate the submucosa thereby rendering the claims under review anticipated by Parasher or obvious by the combined teachings of Parasher and U.S. Patent No. 5,407,807 to Markus ("Markus");

2

2)      Whether CDx waived its argument that Parasher fails to teach a brush with "sufficient stiffness" because it did not raise the argument below and has made it here for the first time; and

3)      Whether the doctrine of collateral estoppel bars CDx from challenging the Board's factual findings regarding the disclosures in Parasher and the testimony of its expert because CDx elected not to appeal two other final judgments with virtually identical factual findings on the same issue.

## STATEMENT OF THE CASE

### A.    Introduction

Parasher expressly teaches a brush that is "capable of penetrating into the submucosa," just as claimed in U.S. Patent No. 6,258,044 ("the '044 Patent"). *U.S. Endoscopy Group, Inc. v. CDx Diagnostics, Inc.*, IPR2014-00642, Paper No. 25, at 22 (P.T.A.B. Oct. 15, 2015) (A89).  CDx's own expert, Dr. Frank Fromowitz, testified ***three separate times*** that Parasher could obtain a specimen that includes portions of the submucosa.  This testimony confirmed the language of Parasher itself, resulting in the Board correctly finding, by a preponderance of the evidence, that Parasher discloses each element of claims 1–8, 11–17, 23–28, 32 and 35–39 and thus anticipates these claims.  CDx provided no further argument as to why the remaining claims were not obvious over Markus, and the Board likewise correctly found that claims 9, 10, 19 and 20 were obvious over Parasher in view of Markus.

In its Final Written Decision, the Board made a factual finding that Parasher expressly discloses a non-lacerational brush with the requisite stiffness to penetrate the epithelium into the submucosa.  (A82–83.)  Again, CDx's expert's testimony confirmed that one of ordinary skill in the art would interpret Parasher in this manner—and slammed the door shut on the patentability of the claims under review.

CDx unsuccessfully tried to disavow its own expert's reading of Parasher, because Dr. Fromowitz's reading of Parasher left no room for doubt.  He testified that Parasher teaches a stiff brush that can acquire tissue all the way from the epithelium to the submucosa.  Specifically, Dr. Fromowitz testified that:

- Parasher's brush acquires a biopsy-type sample from the submucosa (A790 ll. 6–12; A794 ll. 5–16; A794 l. 24–A795 l. 4);

- Parasher's use of the term "adjacent tissue" includes the submucosa (A789 l. 20–A790 l. 12); and

- Parasher's brush is non-lacerational (A796 ll. 5–8).

In applying Parasher to find the claims under review unpatentable, the Board did not rely on any inherency argument.  Indeed, this was not necessary—Dr. Fromowitz's explanation of what Parasher expressly taught confirmed the unpatentability of the reviewed claims.

Still, CDx makes the misplaced argument that the Board erred in finding that Parasher "inherently" discloses this claim element.  CDx's argument  conflates the Board's reliance on well-established Federal Circuit precedent regarding the "capability" of a prior art device to perform a function identified in the patent claims under review with this Court's inherency doctrine, which focuses on whether a feature is undisclosed or unrecognized in the prior art reference.

Contrary to CDx's argument, the Board relied on *In re Schreiber* only for the proposition that if a prior art structure is capable of performing the intended use identified in the patent claims under review, then it meets the claims. (A90 (citing *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).)  This is not a statement of inherency.  Although *In re Schreiber* is often relied on for its inherency test enunciated in another part of the opinion, the Board did not rely on that inherency test nor did it find that Parasher inherently discloses the claim elements.  Instead, the Board found that Parasher expressly teaches these limitations—consistent with the reading of one of skill in the art, namely, Dr. Fromowitz.  (A89.)  As a result, CDx's inherency attack is misplaced and ignores the finding below.

In addition to its conflation of the inherency doctrine with express teaching from the prior art, CDx raises here for the first time that Parasher "teaches a brush that includes bristles with an unspecified stiffness."  (Br. at 30.)  In its Final Written Decision, the Board found that CDx had not contested the stiffness of the Parasher brush and deemed it admitted.  (A83.)  Under 37 C.F.R. § 42.23, any material fact not specifically denied is considered admitted. CDx is thus barred from making this argument here.  Moreover, the argument is unavailing because the claims of the '044 Patent merely require "sufficient stiffness," and Parasher clearly teaches a brush with stiff or semi-rigid bristles that can acquire a tissue

sample by penetrating into the submucosa. CDx likely did not make this argument below because it fails on its face.

Lastly, the doctrine of issue preclusion bars CDx from challenging the factual findings of the Board with regard to Parasher and Dr. Fromowitz's testimony. In its decisions in the IPRs involving U.S. Patent No. 6,676,609 ("the '609 Patent) and U.S. Patent No. 7,004,913 ("the '913 Patent"), the Board made factual findings and legal conclusions that CDx, for tactical reasons, chose not to appeal. In this appeal, however, CDx attempts to relitigate those issues—issues that have already been decided or are unavailing.

In sum, Parasher expressly teaches the claim elements at issue. CDx's own expert confirmed that, as one of skill in the art, he read Parasher to expressly teach the claim elements, resulting in a finding of unpatentability. CDx's misapplication of the inherency doctrine ignores the Board's actual findings, and its newly-minted argument on "stiffness" likewise fails. The Board properly found that Parasher teaches the claimed elements at issue and thus properly held the claims under review unpatentable. The Board's Final Written Decision should be affirmed.

### B.    Counterstatement of Facts

Due to CDx's omissions of key evidence and testimony that are pertinent to the issues on appeal, U.S. Endoscopy sets forth the following counterstatement of the facts.

### 1.    The '044 Patent

U.S. Patent No. 6,258,044 ("the '044 Patent) claims an apparatus and method for obtaining cells from layers of epithelial tissue.  The apparatus disclosed is a brush having bristles of sufficient stiffness to penetrate the basement membrane underlying the epithelium in order to reach the submucosa.  (A2476 claim 1.)  Both U.S. Endoscopy and CDx submitted similar exhibits illustrating the composition of epithelial tissue.  As shown in CDx's demonstrative (as adopted by the Board), epithelial tissue has a superficial, intermediate and basal layer:



(A71.)  These layers of epithelial tissue rest on the basement membrane that in turn lays on the submucosa.

8

The brush of the '044 Patent is able to reach the submucosa without use of an incision-based biopsy and the difficulties and dangers associated with that technique. (A2472 col. 4 l. 63–A2473 col. 5 l. 8; A2473 col. 5 ll. 24–40; A2475 col. 9 ll. 19–20.)  As seen in Figure 4 of the '044 Patent, the brush is mounted on the distal end of a handle:



FIG.4

(A2465.)

The '044 Patent describes this brush as being "non-lacerational."  The term "non-lacerational" is defined by the '044 Patent by comparing and contrasting cytology and lacerating biopsy techniques.  According to the '044 Patent, prior art cytological sampling instruments have soft bristles, soft flexible fimbriated or fringed ends, or in some cases no bristles at all.  The '044 Patent identifies the prior

9

art Cytobrush®, a brush device that uses soft and tapered bristles to sweep up or gently remove previously exfoliated cells from the surface of the epithelium. (A2472 col. 3 ll. 9-18.)

Cytology avoids abrasive action and does not penetrate into the tissue. (*See* A2471 col. 2 l. 26–A2472 col. 4 l. 24.) By contrast, the '044 Patent describes a lacerating biopsy as a procedure using a cutting instrument, like a scalpel, to penetrate and remove tissue. (A2471 col. 1 l. 65–col. 2 l. 3.) The '044 Patent's apparatus is intended to act similar to a lacerating biopsy and obtain a tissue sample that is greater and more complete than a cytologic sample of cells.

For instance, the '044 Patent states in its Summary of the Invention that "the resulting cellular sample functionally approximates the cellular sample of a lacerating biopsy device, but is obtained with the ease of a swab application, and without discomfort to the patient." (A2473 col. 5 ll. 10–14.) The brush is designed to "penetrate beneath the superficial layer of the epithelium to sample all three epithelial layers." (A2474 col. 8 ll. 8–10.) The brush also has the capability to penetrate the basement membrane and the submucosa. (A2474 col. 8 ll. 13–14; A2476 col. 11 ll. 9–12.)

To achieve this, the '044 Patent uses a brush with stiff bristles to penetrate the epithelium and remove a tissue sample that is similar to a biopsy sample, but without the invasive effects of a lacerating biopsy. (A2472 col. 4 l. 66–A2473 col.

10

5 l. 2.) The inventors state that Velcro is an acceptable material to meet the stiffness requirement. (A2475 col. 9, l. 45.) The '044 Patent's brush can be used to scrub harder than a cytology brush so that the surface of the epithelium is penetrated. (*Id.*) According to the Summary of the Invention, "[b]y rubbing harder than normal cytological sampling, and using a device which penetrates the epithelium slightly on each stroke, one can reach to the basement membrane without lacerating." (*Id.*) In other words, by scrubbing harder or with more pressure, the brush of the '044 Patent can acquire a tissue sample that is deeper by penetrating more layers than the standard cytology brush.

### 2.   The Parasher Prior Art Reference

Parasher discloses a non-lacerational brush with stiff or semi-rigid brushes that acquires a sample of tissue by penetrating the epithelium into the submucosa. In the very first line of its Abstract, Parasher discloses that its invention is "a medical device [that] performs simultaneous brush cytology and scrape biopsy." (A568 Abstract.) The Abstract also teaches that the bristles of its brush are "semi-rigid" and "relatively stiff"—apparently with sufficient stiffness to permit "collection of enough tissue to provide a biopsy sample." (*Id.*) Additionally, in its "Field of the Invention," Parasher states that the invention relates to performing scrape biopsies of structures within biological ducts by employing a Velcro hook pad having relatively stiff bristles. (A571 col. 1 ll. 11–17.)

In its "Description of the Prior Art," Parasher sets forth a clear statement of the problem its brush seeks to solve—providing a brush with biopsy capability by extracting a gross tissue sample. (A571 col. 1 ll. 56–58.)  Moreover, Parasher discloses in its Background section that in order to make a proper diagnosis, its brush (as ultimately described in Parasher's Summary of the Invention and Detailed Description sections) must examine "the mucous lining of the duct, the tissue of the duct wall, and even adjacent tissues." (A571 col. 1 ll. 63–64.)  CDx tries to take the Board to task for relying on Parasher's statement of the problem simply because it is in the Description of the Prior Art part of the Background section. (Br. at 18.)  The statements made in the Description of the Prior Art not only set up the problem solved by Parasher's brush, but also define the term "gross tissue sample" that Parasher uses throughout its written description to describe the biopsy sample obtained using Parasher's brush. (*See* A571 col. 1 ll. 54–64.)  Also, this section is obviously part of the information disclosed by Parasher for prior art purposes.

Following this setup of the problem and definition of terms, Parasher discloses in the Summary of the Invention that its brush obtains a "gross tissue sample or biopsy." (A571 col. 2 ll. 24–25.)  In the Summary of the Invention, Parasher also teaches that the brush can perform both brushing of cells and scraping of tissues. (A572 col. 3 ll. 26–28.)  By using the term "scraping," Parasher teaches that the brush can obtain a biopsy-type sample.  Parasher also describes its

method for using the brush to acquire tissue as pushing and pulling the brush "back

and forth over the inner wall of the duct":

> The brush bearing end of the catheter is moved to the selected area of
> the duct and pushed and pulled, back and forth over the inner wall of
> the duct. The bristles of the brush collect sample scrapings of tissue
> and brushings of cells at the selected area. The end of the catheter
> with the brush is withdrawn from the duct through the endoscope or
> into a sleeve provided to protect the sample. The scrapings of tissue
> and cells that cling to the brush can then be removed and analyzed by
> standard methods.

(A572 col. 3 ll. 23–32.)

The Parasher brush has semi-rigid bristles to collect sample scrapings of

tissue where in one embodiment the bristles are Velcro. (A572 col. 3 ll. 24–28.)

Figures 4a-4c illustrate several different bristle arrangements:



(A570.)  Finally, the Parasher brush is designed for "collecting samples from

internal organs" with one particular use being in ducts of the gastrointestinal

("GI") tract such as the pancreatic duct. (A573 col. 1 ll. 1–2; col. 5 ll. 58–61.)

### 3.    CDx's Expert Testifies that Parasher Discloses the Contested Elements of the '044 Patent—And CDx Seeks to Disavow This Testimony

CDx presented Dr. Frank Fromowitz as its expert.  Dr. Fromowitz is a

pathologist with over 35 years experience including extensive experience in the

pathology of the GI tract.  (A897 ¶ 4.)  He is employed as CDx's Laboratory

Director.  (*Id.* ¶ 1.)  There was no dispute in the IPR that he was qualified to

provide expert testimony, that he is one of ordinary skill in the art (A903 ¶ 23) and

that the Board relied on his testimony.[1]  During his cross-examination, he testified

that he had previously read the Parasher prior art reference. (A788 ll. 9–13.)

On cross-examination, Dr. Fromowitz testified that Parasher collects the same

sample of cells and epithelial tissue, basement membrane and submucosa as claimed

in the '044 Patent.  (A789 l. 6–A790 l. 12; A794 l. 24–A795 l. 4.)  He further testified

that one of skill in the art would understand that Parasher's use of the term "adjacent

tissue" includes the submucosa and that Parasher's brush is non-lacerational. (A789 l.

20–A790 l. 12; A795 ll. 5–8).  Additionally, Dr. Fromowitz testified that Parasher's

use of the term "scrapings" means a brush yielding a histological-type sample such as

a biopsy specimen. (A793 ll. 9–17.)  Put another way, "scrapings" means a biopsy-

type sample including all the cell layers acquired by a biopsy, but with the

architecture of the layers not necessarily maintained. (A793 l. 18–A795 l. 4.)

After Dr. Fromowitz's cross-examination, CDx sought to alter his testimony.

First, on March 6, 2015, CDx attempted to file an errata sheet seeking to change

his testimony.  (A3063.)  On March 9, 2015, CDx withdrew this request.  Then, on

March 17, 2015, CDx sought authorization to file an observation of its own expert.

---

[1] U.S. Endoscopy presented Dr. Michael Kahaleh as an expert to provide testimony as to the definition of terms used in the '044 Patent.  Dr. Kahaleh did not present any testimony on Parasher and the Board did not rely on the testimony that he did present.

(A3064.)  On March 19, 2015, the Board held a telephone conference and denied this request.  Thus, on two separate occasions, CDx sought to essentially exclude its own expert's testimony.

### 4.    The Board's Findings on the '044 Patent

The Board found claims 1–8, 11–17, 23–28, 32 and 35–39 unpatentable under 35 U.S.C. 102(b) as anticipated by Parasher and claims 9, 10, 19 and 20 unpatentable under 35 U.S.C. 103(a) as obvious over Parasher and Markus.  (A95.) In reaching its final decision on the '044 Patent, the Board made several factual findings concerning the scope and content of Parasher's disclosure as well as Dr. Fromowitz's explanation of the terms of Parasher.

#### a.    *The Board's Findings on Parasher*

The Board found, and CDx did not contest, that Parasher discloses:

- A brush to collect tissue cells within epithelium tissue (as shown below):



(A82 (citing A569 Fig. 1));

- A non-lacerational brush having stiff or semi-rigid bristles (A82);

- a brush that is movable to bear against the tissue being examined to remove tissue from the examination area and pulled back and forth over the duct to collect scrapings of tissue in a process that Parasher calls a "scrape biopsy" (A82–83); and

- the brush has stiff or semi-rigid bristles to facilitate collection of tissue with the Board holding that the "stiffness and shape of the bristle tips of Parasher contribute to the effectiveness of retrieving a specimen" (A83).

According to the Board, CDx admitted that Parasher disclosed these elements because: "[t]hese ***contentions are not contested by the Patent Owner***. *See* 37 C.F.R. 42.23(a) (any material fact not specifically denied may be considered admitted)." (A83, emphasis added.)

In addition, the Board rejected out-of-hand the only contested issue raised by CDx—the argument that Parasher was silent on the ability of its brush to penetrate and collect tissue from at least two layers of epithelial tissue (A84.) The Board disagreed with both CDx's "implication that Parasher must disclose such capability in the words of the '044 Patent and with Patent Owner's characterization of the reference." (*Id.*) The Board also rejected CDx's argument that anticipation is an "*ipsissmis verbis* test." (*Id.*) Instead, the Board focused its inquiry on "what a

person of ordinary skill in the art would understand as the capability of Parasher's brush." (A85.) The Board found that "Parasher is not silent regarding the capabilities of the brush." (*Id.*)

The Board ultimately determined that Parasher's brush has stiff bristles that penetrate the tissue sample into the submucosa in exactly the way claimed in the '044 Patent:

> Parasher's brush, like the claimed device, includes ***bristles that are stiff and have a shape that contributes to penetrating the tissue sample and collecting a specimen***. Parasher's brush, like the claimed device, ***obtains a specimen by bearing against the tissue*** being examined. The specimen obtained by Parasher's brush is an ***aggregation of cells large enough to be visible to the naked eye***. In light of the foregoing, we find that Petitioner has shown, by a preponderance of the evidence that ***Parasher's brush obtains such a specimen by penetrating into the tissue being examined and, with sufficient force applied, penetrating through the tissue to the submucosa***.

(A86, emphasis added.) The Board could have found the claims unpatentable on this rationale alone, but it did not stop there. The Board instead turned to how one of ordinary skill in the art understood Parasher.

   b.   *The Board's Factual Findings Concerning Dr. Fromowitz's Testimony*

Consistent with Dr. Fromowitz's cross-examination, the Board determined that one of skill in the art reads Parasher to disclose:

1)   a brush that obtains a gross tissue sample visible to the naked eye (A88);

2)   this sample would include more cells than obtained by cytology (*id.*);

3)   the size of the sample demonstrates Parasher's brush "dislodges cells from not only the surface, but also from within the epithelium and that "[t]his information is consistent with our analysis of Parasher" (A89);

4)   Dr. Fromowitz testified three separate times that Parasher's brush could obtain a specimen that included the submucosa, which is "consistent with our analysis of Parasher" (*id.*); and

5)   Parasher's brush not only dislodges cells from below the epithelium surface, "but is also capable of penetrating to the submucosa" (*id.*).

Simply put, the Board found that Dr. Fromowitz's testimony about Parasher's disclosure was consistent with its own analysis of Parasher.

### c.   *CDx Failed to Contest "Sufficient Stiffness" in the IPR*

In its Final Written Decision, the Board stated that the only "claim aspect" CDx contested was whether Parasher teaches obtaining the claimed tissue specimen. (A84.)  Now, however, CDx presents arguments for the first time regarding whether Parasher teaches "sufficient stiffness."  (Br. at 42.)  CDx, however, did not present this argument to the Board.  Its Preliminary Response is completely silent about stiffness.  In its Final Response filed with Dr. Fromowitz's declaration, CDx twice quotes the claim element "bristles having sufficient stiffness to penetrate at least said two layers of said epithelial tissue" and then

18

simply asserts that Parasher is silent as to this limitation.  Its only argument as to

why Parasher is "silent" regarding this limitation is related to Dr. Kaheleh's

definition of biopsy.  (A2258–59.)  These two passing references to "sufficient

stiffness" were merely part of a quote to the entire claim language and are not

argument demonstrating a contested issue.  CDx provided no evidence in its Final

Response as to how Parasher fails to disclose "sufficient stiffness," nor did it make

any argument on this front.  Finally, at the Oral Hearing, it did not present

arguments on stiffness with its only mention of stiffness being in a response to a

question from the Board.

### d.     The Board's Claim-by-Claim Rulings

Relying on its analysis of Parasher and Dr. Fromowitz's supporting

testimony, the Board issued claim-by-claim conclusions *finding all reviewed claims*

*unpatentable*.  In reaching these conclusions, the Board rejected CDx's contention

that "Parasher is silent regarding the capabilities of the brush" and found the

necessary sample is obtained.  (A89.)  While the different claims of the '044 Patent

use slightly different language to describe the sample that may be obtained, the

Board found that Parasher disclosed a brush that obtains each iteration of the tissue

sample found in the reviewed claims.  Moreover, the Board found that "***Dr.***

***Fromowitz's testimony is consistent with, and further supports Petitioner's case***."

(A90, emphasis added.)  CDx subsequently appealed this Final Written Decision.

19

5.      **The Board's Findings in the IPR Proceedings on the '609 and '913 Patents.**

The '609 Patent and the '913 Patent are also owned by CDx and focus on similar aspects of the same brush technology.  The '609 and '913 Patents were the subjects of separate IPR proceedings (Nos. IPR2014-00639 and IPR2014-00641, respectively) that were consolidated with the '044 Patent IPR for oral hearing purposes only.  CDx was represented by the same counsel in all three IPR proceedings.  The '609 and '913 Patent IPRs turned on the very same issue: whether Parasher obtains the correct tissue sample.  Like its argument for the '044 Patent, U.S. Endoscopy argued that Parasher expressly teaches all elements of the claims in the '609 and '913 Patents, which was confirmed by Dr. Fromowitz on cross-examination.

The Board agreed with U.S. Endoscopy and entered decisions finding all of the claims in the '609 and '913 Patents unpatentable.  In many instances, the Board made factual findings identical to those in Final Written Decision for the '044 Patent:

| '044 Patent | '609 & '913 Patents |
|---|---|
| Parasher's brush is non-lacerational (A82 & n.17) | Parasher brush is non-lacerational (A20 & n.23; A54 & n.25) |
| Parasher describes its process as "scrape biopsy" (A83 16) | Parasher describes its process as "scrape biopsy" (A20; A54) |
| Parasher discloses "stiff or semi-rigid" bristles, "not contested" (A83) | Parasher discloses "stiff or semi-rigid" bristles, "not contested" (A21; A55) |
| "Parasher is not silent regarding the capabilities of the brush"  (A85) | "Parasher is not silent regarding the capabilities of the brush"  (A23; A57) |

| '044 Patent | '609 & '913 Patents |
|---|---|
| "Parasher's brush is capable both of collecting cells (cytology) and of collecting a larger (greater) sample of tissue (biopsy)" (A85) | "Parasher's brush is capable both of collecting cells (cytology) and of collecting a larger (greater) sample of tissue (biopsy) . . . capable of collecting 'scrapings of tissue.'" (A23; A57) |
| "The specimen obtained by Parasher's brush is an aggregation of cells large enough to be visible to the naked eye. In light of the foregoing, we find that Petitioner has shown, by a preponderance of the evidence, that Parasher's brush obtains such a specimen by penetrating into the tissue being examined and, with sufficient force applied, penetrating through the tissue to the submucosa." (A86) | "The specimen obtained by Parasher's brush is an aggregation of cells large enough to be visible to the naked eye. Considering the evidence to this point, Petitioner has shown by a preponderance of the evidence that Parasher's brush obtains such a specimen by dislodging cells from below the exterior boundary of the epithelium." (A24; A58) |
| Fromowitz testified that "adjacent tissue" would "have to include the submucosa." (A87) | Fromowitz testified that "adjacent tissue" would "have to include the submucosa." (A25; A59) |
| Fromowitz: Parasher could penetrate submucosa, "but not reliably so." (A88) | Fromowitz: Parasher could penetrate submucosa, "but not reliably so." (A27; A61) |
| Parasher's device dislodges cells from not only the surface, but also from within the epithelium (A88) | "Parasher's brush not only is capable of dislodging cells from below the surface of the epithelium, but can also penetrate to the submucosa." (A27; A62) |
| "Parasher is not silent, and Petitioner's analysis of Parasher demonstrates that it is more likely than not that Parasher's brush obtains such a specimen by collecting cells from the various layers of the epithelium, including down to the submucosa." (A88–89) | "Parasher is not silent, and Petitioner's analysis of Parasher demonstrates that it is more likely than not that Parasher's brush obtains such a specimen by dislodging cells from below the exterior boundary of the epithelium." (A28; A63) |

21

Significantly, in its decisions on the '609 and '913 Patents, the Board found that "it is more likely than not that Parasher's brush obtains such a specimen by dislodging cells from below the exterior boundary of the epithelium" and that "Dr. Fromowitz's testimony is consistent with, and further supports" this finding.  (A28; A62.)  CDx appealed the Final Written Decisions issued on the '609 and '913 Patents, and then later consolidated the appeals with the appeal in the '044 Patent. CDx dismissed its appeals on the '609 and '913 Patents shortly before filing its brief in this appeal.

## SUMMARY OF THE ARGUMENT

Parasher teaches a brush that penetrates into the submucosa. It thus anticipates and renders obvious (when combined with Markus) the '044 Patent. The scope and meaning of Parasher is clear from its very beginning—even in its Abstract, Parasher discloses a "biopsy brush" with "semi-rigid" and "relatively stiff" bristles that permits "collection of enough tissue to provide a biopsy sample." (A568 Abstract.)  Parasher provides further detail throughout its written description, stating that the purpose of its brush is to improve on prior art brushes that were used only for cytology and did not acquire a deep-enough tissue sample to diagnosis malignancy.  (A571 col. 1 ll. 54–64.)  In order to provide such a diagnosis, Parasher discloses a brush to acquire a "gross tissue sample or biopsy" (A571 col. 2 ll. 24–25) that includes "the mucous lining of the duct, the tissue of the duct wall and even adjacent tissues" (A571 col. 1 ll. 61–64).  In other words, and as the Board found, Parasher discloses a brush that takes samples into the submucosa—exactly what is claimed by the '044 Patent.

Regardless of any remaining ambiguity, CDx's own expert, Dr. Fromowitz, left no doubt as to the teachings of Parasher.  Dr. Fromowitz testified *three separate times* that Parasher's brush can reach the submucosa.  (A790 ll. 6–12; A794 ll. 5–16; A794 l. 24–A795 l. 4.) The Board relied on this testimony to bolster the express teachings in Parasher and to find the '044 Patent unpatentable.

23

Four claims of the '044 Patent include additional elements not found in Parasher, so the Board relied on Markus, another prior art reference related to a sampling brush, to find the claims unpatentable as being obvious when combined with Parasher. As the Board found below, it would have been obvious to one of ordinary skill in the art to modify Parasher to include the additional elements of Markus. CDx did not contest any aspect of the obviousness rejection other than to make the same failed factual contention regarding Parasher.

With Parasher's express disclosure confirmed by CDx's own expert, CDx concocts an argument on appeal that the Board incorrectly applied the inherency doctrine. The Board did nothing of the sort. The inherency doctrine applies where a prior art reference is silent as to a particular element, but that the element is nonetheless necessarily present. In ruling on the '044 Patent, however, the Board expressly found, "Parasher is ***not silent*** regarding the capabilities of the brush." (A85, emphasis added.) Accordingly, the inherency doctrine has no application here, the Board did not rely on inherency, and CDx's inherency arguments hold no weight.

CDx also makes a new argument on appeal, namely that Parasher fails to disclose the "sufficient stiffness" element of claim 1 of the '044 Patent. This argument should be deemed waived because CDx never made it before the Board. This Court's review of Board decisions is limited to the record below. Nowhere in the record does CDx make this argument. It is particularly obvious that the

24

argument was not made because making it would have required separate treatment of claim 1, because it is the only independent claim with this limitation.  There is no difference, however, in CDx's arguments for the independent claims.

CDx next lobs several faulty arguments in a final attempt to save its patent. First, CDx argues that language in Parasher's Background section relates only to other prior art and not to Parasher itself, and thus should be ignored.  Such a position is contrary to both common sense and the express teachings of this Court. Second, CDx contends that a shift in the Board's reasoning from its decision to institute the IPR to its final decision constitutes legal error.  If this were the case, there would be no purpose to the post-institution part of the IPR proceeding, and there would be no reason to introduce expert testimony after institution.  Third, CDx argues that interpretation of Parasher in the '609 and '913 Patents, directed to broader claims, somehow proves that the Board incorrectly interpreted Parasher in this case.  This argument fails on its face because the Board made the exact same factual findings with regard to Parasher in all three IPRs.

Finally, CDx's decision to abandon its appeals of the '609 and '913 Patents created binding final judgments in those cases that estop it from now challenging the same issues in the present appeal.  By dropping those appeals, CDx acquiesced to the Board's factual findings regarding the scope and teachings of Parasher, and cannot now challenge those same findings here.

# ARGUMENT

## A.    Standard of Review

Factual findings of the Board are reviewed under the substantial evidence standard. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Evidence is substantial "if a reasonable mind might accept it as adequate to support the finding." *In re Adler*, 723 F.3d 1322, 1325 (Fed. Cir. 2013). *See also Merck & Cie v. Gnosis S.P.A.*, No. 2014-1779, 2016 U.S. App. LEXIS 7503 (Fed. Cir. Apr. 26, 2016).

Anticipation provides a basis for invalidating a patent claim under 35 U.S.C. § 102(a) and focuses on whether a prior art reference shows each and every element of the claimed invention, as arranged in the claim. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983). A finding of "anticipation," such as the Board found for Claims 1–8, 11–17, 23–28, 32 and 35–39 of the '044 Patent, is a question of fact reviewed under this substantial evidence standard. *In re Morsa,* 713 F.3d 104, 109 (Fed. Cir. 2013).

Obviousness provides a basis for invalidating a patent claim under 35 U.S.C. § 103 and focuses on the scope and content of the prior art as well as the differences between the prior art and the claims at issue. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). Obviousness is a question of law with underlying issues of fact. *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). For an

appeal based on an obviousness finding, the Court reviews the Board's compliance with governing law *de novo*, while it reviews the underlying factual determinations under the substantial evidence standard. *Id.* Here, CDx only challenges the factual underpinnings of the Board's anticipation and obviousness findings. Significantly, CDx did not appeal the Board's legal findings regarding obviousness.

### B. Parasher Teaches the Claimed Elements of the '044 Patent

The entire record of the IPR for the '044 Patent demonstrates that Parasher discloses all of the elements of claims 1–8, 11–17, 23–28, 32 and 35–39, and when combined with Markus, also teaches all elements of claims 9,10, 19 and 20. Consequently, substantial evidence established that the claims of the '044 Patent under review are unpatentable.

#### 1. *Parasher's Teachings Render the Claims Under Review Unpatentable*

Even without the aid of Dr. Fromowitz's testimony, it is clear that Parasher discloses a non-lacerational brush with bristles that have the requisite stiffness to acquire a sample of tissue that goes beneath the epithelium. In the very first line of its Abstract, Parasher sets the stage by stating: "a medical device performs simultaneous brush cytology and scrape biopsy." The Abstract also teaches that the bristles of the brush must be "semi-rigid" and "relatively stiff" in order to permit "collection of enough tissue to provide a biopsy sample." (A568 Abstract.)

Parasher then sets forth the problem that it seeks to solve: providing a brush offering biopsy capability by extracting a gross tissue sample.  (A571 col. 1 ll. 56–58.)  In order to make a proper diagnosis, the Parasher brush may need to examine "the mucous lining of the duct, the tissue of the duct wall and even adjacent tissues."  (A571 col. 1 ll. 61–64.)

The Summary of the Invention expounds on the problem to be solved: "there is a need to enable collection of a sample ***sufficient to <u>qualify as a biopsy</u>***."  (A571 col. 2 ll. 16–18, emphasis added.)  Parasher next discloses that its brush obtains a "gross tissue sample or biopsy." (A571 col. 2 ll. 24–25.)  Then, Parasher teaches that the brush can perform both sample scrapings of tissue and brushings of cells. (A572 col. 3 ll. 26–28.)

Finally, Parasher describes the method used to acquire tissue and cells with its brush.  Parasher discloses that its brush is "pushed and pulled, back and forth over the inner wall of the duct.  The ***bristles of the brush collect sample scrapings of tissue*** and brushings of cells at the selected area." (A572 col. 3 ll. 24–28, emphasis added.)  Parasher further describes that the brush can be operated either gently to only collect some surface cells or "more vigorously to obtain pieces of tissue for biopsy analysis."  (A572 col. 3 ll. 63–67.)  Parasher's scraping process is designed to collect tissue into the submucosa.

CDx did not contest any claim element except for whether Parasher penetrates and collects tissue from at least two layers of epithelium. (A84.) Thus, the Board properly found every other element including "non-lacerational" and "sufficient stiffness" admitted. (A83.) The substantial evidence supports the Board's factual findings.

The Board correctly found that Parasher is "not silent regarding the capabilities of the brush." (A85.) Parasher's brush is capable of collecting a "gross tissue sample that includes the lining of the duct, the tissue of the duct, and even adjacent connective tissue (e.g., the submucosa)." (A85.) The Board also stated that "Patent Owner simply contends that Parasher is silent regarding the capabilities of the brush," but disagreed with the contention, and instead found it more likely than not the Parasher's brush obtains the required specimen:

> To the contrary, Parasher is not silent, and Petitioner's analysis of Parasher demonstrates that it is more likely than not that Parasher's brush obtains such a specimen by ***collecting cells from the various layers of the epithelium, including down to the submucosa***. If a prior art structure is capable of performing the intended use, then it meets the claim. *See, e.g., In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997)

(A89–90, emphasis added.) The Board found substantial evidence that established that Parasher's brush penetrates the epithelium and ultimately to the submucosa. Based on this substantial evidence, Parasher discloses the only contested claim element.

## 2.    *CDx's Expert Dr. Fromowitz Confirms Parasher's Teachings*

Dr. Fromowitz's cross-examination confirmed the Board's reading of Parasher—and its finding that Parasher renders the reviewed claims unpatentable. This is not surprising given that his cross-examination confirmed factual support for the Board's decision that Parasher renders the reviewed claims unpatentable.[2] (A86).

The cornerstone of Dr. Fromowitz's testimony is his description of how far the Parasher brush penetrates: into the *submucosa*.  (A790 ll. 6–12; A794 ll. 5–16; A794 l. 24–A795 l. 4.)  This was not a "one-off" comment.  Dr. Fromowitz unequivocally testified *three separate times* that Parasher's brush can reach the submucosa.  (*Id.*)  He also testified that Parasher's brush acquires the same tissue samples required by the claims of the '044 Patent under review. (A791 ll. 13–18.) Although CDx challenges the "capable of" language, Dr. Fromowitz's testimony is consistent with the described function of the Parasher brush.  The Parasher brush, like the brush in the '044 Patent, moves back and forth to collect cells and tissue. (A572 col. 3 ll. 23–32.)

---

[2] CDx only relied on Dr. Fromowitz to contest Dr. Kahaleh's definition of biopsy. Because the Board did not rely on Dr. Kahaleh's testimony regarding the composition of a biopsy specimen, CDx's arguments applying this testimony from Dr. Fromowitz were found irrelevant.  (A86.)

Dr. Fromowitz also stated that Parasher's brush bristles penetrate into the submucosa and obtain a full thickness sample. (A775 l. 9–A786 l. 22; A790 ll. 11–12; A791 ll. 13–18.)  The submucosa is located below the epithelial tissue so it is axiomatic that if the submucosa is reached, all layers of the epithelium are traversed in the process.  CDx argues that there is "no evidence" to establish that Parasher's brush collects cells from "within the epithelium."  (Br. at 36.)  While this point was probably not argued below, it is more importantly nonsensical. Again, if the Parasher brush is reaching the submucosa as Dr. Fromowitz testified it does, then the brush must necessarily go through (and thus within) the epithelium.

It is inescapable: *one of skill in the art testified three separate times that Parasher's brush reaches the submucosa*.  This leads to the single conclusion that one of ordinary skill in the art reads Parasher to teach the brush claimed by the '044 Patent.  For both the Board's findings of anticipation and obviousness, only factual underpinnings about the scope of Parasher's disclosure are at issue.  CDx has not challenged any question of law regarding the obviousness determination. Thus, the Board's findings should be reviewed for substantial evidence, and there is more than substantial evidence that the Board was correct in finding claims 1–8, 11–17, 23–28, 32 and 35–39 anticipated by Parasher and claims 9,10, 19 and 20 obvious over Parasher and Markus.

3.    *The Board Did Not Rely on Inherency to Invalidate the '044 Patent*

On appeal, CDx conjures up an inherency argument that misses the mark. According to CDx, the Board's finding of anticipation should be reversed because " [t]he Board's reliance on . . . Dr. Fromowitz's testimony to find inherent anticipation was legal error."  (Br. at 40.)    This argument falls short because Parasher explicitly discloses, as confirmed by Dr. Fromowitz, that Parasher's brush reaches the submucosa.  CDx's complaint about inherency is thus misplaced.

The inherency doctrine provides that "[n]ewly discovered results of known processes directed to the same purpose are not patentable because such results are inherent."  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1376 (Fed. Cir. 2001).  Courts only invoke the inherency doctrine in limited situations where a prior art reference "is silent" about a claim element.  *Cont'l Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

Here, as much as CDx may wish it so, the Board did not rely on the inherency doctrine to invalidate the '044 Patent.  Quite the opposite, the Board explicitly found that "Parasher ***is not silent*** regarding the capabilities of the brush. Instead, . . . Petitioner identifies and explains numerous disclosures regarding the extent of the specimen that is collected by Parasher's brush."  (A85, emphasis added.) Contrary to CDx's arguments, the Board made an evidentiary finding that Parasher "is not silent" about its brush's capabilities.

Notwithstanding the text of the Board's decision, CDx argues that the Board cited *In re Schreiber*, 128 F.3d 1473 (Fed. Cir. 1997), "to support [its] 'inherency' finding." (Br. at 6.) (*See also* Br. at 26–27, 35–40.) This is not the case. The Board cited *In re Schreiber* only for proposition that "[i]f a prior art structure is capable of performing the intended use, then it meets the claim." (A90 (citing *In re Schreiber*, 128 F.3d at 1477) ("It is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable.").)

The Board did not rely on *In re Schreiber* for its inherency doctrine, which appears later in that opinion. *See id.* at 1478 (discussing inherency of functionally defined limitations). Inherency doctrine was not necessary in this case because the '044 Patent includes no "newly discovered results"—Parasher discloses the very results the '044 Patent purports to have invented. Accordingly, CDx's argument that the Board erred in its application of inherency is nothing but a straw man and is not germane to this appeal. Substantial evidence supports the Board's decision that Parasher expressly teaches the disputed claim element.

### 4.    *The Board's Claim-By-Claim Analysis Was Correct*

Moreover, the substantial evidence before the Board established that each reviewed claim of the '044 Patent is anticipated by Parasher or obvious over Parasher and Markus.

33

Claim 1 recites a brush "having sufficient stiffness to penetrate at least said two layers of said epithelial tissue." The Board found that Parasher discloses a brush with bristles capable of taking a "gross tissue sample" which includes "the mucous lining of the duct, the tissue of the duct wall and even adjacent tissues." (A571 col. 1 ll. 56–64.) Dr. Fromowitz confirmed that "adjacent tissue" would "have to include the submucosa." (A790 ll. 7–10.) Thus, the claim is anticipated.

Claim 2 depends from claim 1 and adds that the brush collects cells from the "superficial, intermediate and basal layers." As noted above, Parasher discloses, as Dr. Fromowitz confirmed, taking a sample into the submucosa, which would include the superficial, intermediate and basal layers.

Claim 3 depends from claim 2 and adds that the "bristles . . . have sufficient stiffness to penetrate said basement membrane and reach said submucosa." Parasher teaches, as Dr. Fromowitz confirmed, taking a sample into the submucosa.

Claims 4–8 and 11 also depend from claim 1. CDx did not provide any additional reasons why these claims were patentable over Parasher, and the substantial evidence supports the Board's anticipation decision.

The remaining reviewed claims that were found anticipated by the prior art merely recite the same elements discussed above and are thus also unpatentable. Independent claim 26 requires collecting cells from "at least two layers" of epithelial tissue, just like claim 1. Independent claim 12 and dependent claim 27

recite harvesting cells from superficial, intermediate and basal layers, just as in claim 2. Dependent claims 13 and 28 add reaching into the submucosa, as in claim 3. For claims 14-17 and 23-25, 32 and 35-36, CDx failed to provide any additional reasons why these claims were patentable over Parasher, and the substantial evidence presented supports the Board's decision.

Finally, as it relates to claims 9,10, 19, 20, CDx argued only that the claims were not obvious over Parasher and Markus for the same reason that it argued claims 1 and 12 were not anticipated by Parasher. CDx makes no argument regarding Markus or the combination of Parasher with Markus. Thus, these claims are unpatentable for the same reasons as claims 1 and 12 above, and the substantial evidence supports the decision by the Board.

### C.    CDx's New "Sufficient Stiffness" Argument Was Waived

The review of a Board decision is limited to the "four corners" of the record below. *In re Gartside*, 203 F.3d at 1314. *See also Howmedica Osteonics Corp. v. Zimmer, Inc.*, Nos. 2015-1498, 2015-1503, 2016 U.S. App. LEXIS 3431 (Fed. Cir. Feb. 26 2016) (non precedential) (obviousness argument not adequately presented to the Board in an *inter partes* reexamination waived.) Moreover, on an appeal from a Board decision, arguments not raised below are waived and should not be considered. *See In re Gartside*, 203 F.3d at 1314; *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2002).

On appeal, CDx raises a new argument that Parasher does not disclose a "brush having sufficient stiffness." CDx claims it contested this before the Board, but a review of the record establishes that it did not. (Br. at 41.) First and foremost, the Board found that CDx only contested one claim element, (reaching the submucosa), and admitted all other claim elements including "sufficient stiffness." (A82–84.) A review of CDx's papers in the IPR supports this finding. CDx's Preliminary Response is completely silent on the issue. Similarly, CDx failed to challenge the "sufficient stiffness" issue in its Response after the Board instituted the IPR. CDx stated for the first time here that Parasher lacks "bristles having sufficient stiffness to penetrate at least said two layers of said epithelial tissue." (A2258–59.)

Before the Board, CDx merely repeated the claim element that includes the "sufficient stiffness" limitation in its papers, but did not argue that Parasher fails to teach "sufficient stiffness." (*Id.*) CDx's only attack on Parasher below was that Parasher does not disclose the other part of this claim element, namely, penetrating at least two layers of the epithelial tissue into the submucosa. (*See* A2259 ("Petitioner attempted to plug the void by relying on Dr. Kahaleh's testimony that the term 'biopsy' inherently includes reaching two layers of epithelium.").)

*Howmedica Osteonics Corp. v. Zimmer, Inc.* is instructive as to whether an argument not presented to the Board may be raised here. Nos. 2015-1498, 2015-1503, 2016 U.S. App. LEXIS 3431 (Fed. Cir. Feb. 26 2016) (non precedential)

The answer is simple: ***it may not***. In *Howmedica*, a party in an *inter partes* reexamination only challenged the interpretation of a reference in an obviousness rejection before the Board, but that party flipped on appeal and argued that the reference was a basis for anticipation. *Howmedica*, 2016 U.S. App. LEXIS 3431, *23-24. This Court found that the anticipation argument was waived because the argument was not fully raised below. *Id.* at *24. This mirrors the present situation. CDx did not fully raise the argument below that Parasher is silent as to stiffness. It cannot now raise it here.

In its IPR Petition, U.S. Endoscopy argued that Parasher described a brush with a Velcro pad having semi-rigid and rough bristles. (A571 col. 2 ll. 41–49; A572 col. 3 ll. 9–13.) It further argued that the '044 Patent lists Velcro as an appropriate material for practicing the claimed invention. This went unrebutted by CDx in its two responses—the record of the trial below. CDx's only mention of stiffness in its papers is when it quoted the claim language containing the element. But it only argued that Parasher failed to meet that element with regards to the tissue sample language contained in that limitation. In its responses, CDx did not argue that Parasher failed to meet the "significant stiffness" claim limitation.

At the Oral Hearing, U.S. Endoscopy's counsel presented arguments that Parasher met the stiffness limitation. CDx did not respond to this argument until prodded by a Board question and then, after a short statement about Velcro and

its capabilities, CDx's counsel returned to its base argument that Parasher does not obtain the required tissue sample. (A406–08.) This is CDx's only commentary on stiffness in this case until its brief before this Court.

While this argument is waived, if it is considered substantively, it fails. At column 9, line 45 of the '044 Patent, the inventors state that Velcro is an acceptable material for making its brush without anything further. (A2475.) Parasher likewise states that its bristles can be made of Velcro. (A571, Abstract.) In other words, both patents disclose using Velcro as the bristles to penetrate the submucosa. Parasher's disclosure of Velcro is equally acceptable as that of the '044 Patent and thus, the prior art has "sufficient stiffness."

CDx did not argue in its papers below that Parasher lacks the "sufficient stiffness limitation" so it is waived. It should not be entertained here.

### D.    CDx's Erroneous Arguments On Appeal Fail To Carry The Day.

#### 1.    *Parasher's Background Section Is Still Part of Its Disclosure*

On appeal, CDx attempts to "un-define" terms in Parasher by arguing that the Board's reliance on Parasher's "Background of the Invention" section is erroneous because the Background "*is not describing Parasher's brush*." (Br. at 25.) It is well settled, however, that the Background section is still part of written description and may be used to define terms used elsewhere in the written description. *See, e.g.*, *Kensey Nash Corp. v. Perclose, Inc.*, 57 Fed. App'x 864,

865 (Fed. Cir. 2003) ("While the background section normally refers to the prior art and not the claimed invention, here [the patentee] ascribes a definition to 'closure device' in the background section and never alters that definition throughout the specification.")  This is the case here.

The Board made a factual finding that the Background section provides clear meaning for the term "gross tissue sample" by stating that the prior art technique "offers no biopsy capability because it cannot effectively extract a gross tissue sample from the area of the stricture," whereas "[t]o diagnose a malignancy associated with a stricture, for example, it may be appropriate to examine the mucous lining of the duct, the tissue of the duct wall and even adjacent tissues." (A571 col. 1 ll. 56–64.)  This definition of "gross tissue sample"—as a sample including "the mucous lining of the duct, the tissue of the duct wall and even adjacent tissues"—is likewise used to describe the capabilities of the Parasher brush later in the specification.  (*See, e.g.*, A571 col. 2 ll. 22–25 (stating that the Parasher brush "can also be used to obtain a larger tissue sample for a biopsy, preferably enabling selection of a brush sample more dependably, and enabling collection of a gross tissue sample or biopsy").)

It is inconsequential to the Board's ultimate finding that the capabilities of the Parasher brush are first defined in terms of the prior art.  This definition of "gross tissue simple" applies to the invention disclosed throughout the entire

written description.  The Board was correct to rely on it in determining the

capabilities of the Parasher brush.

> ## 2. *The Board's Final Judgment Need Not Be a Carbon Copy of Its Decision to Institute*

CDx also argues on appeal, notably without legal support, that the Board

committed legal error by not limiting its final decision to the specific grounds

identified in its preliminary decision instituting the IPR.  CDx's argument that the

Board must be held to the preliminary findings in its decision to institute the IPR is

erroneous.  (Br. at 4–5, 17.)

By statue, the Board's decision to institute an IPR is a ***preliminary*** decision

that is non-appealable.  35 U.S.C. § 314(d).  The institution of an IPR requires only a

reasonable likelihood of unpatentability while the final decision requires

unpatentability to be shown by a preponderance of the evidence.  37 C.F.R.

§ 421.08(c).  At the institution stage, neither the Board nor the parties have the

benefit of patent owner witness testimony, let alone a complete record.  The codified

process provides for a preliminary ruling followed by discovery, a trial on the papers

and an oral argument that are followed by the issuance of a final written decision

and finally a potential appeal.  *See generally* 35 U.S.C. § 316.  It logically follows

that the Board may make evidentiary rulings as evidence comes into the record over

the course of the IPR.  If that were not the case, then the decision instituting the IPR

would be appealable and the rest of the IPR process would be unnecessary.

In this case, the Board instituted the IPR based on a reasonable likelihood of unpatentabililty over Parasher and Markus and based on the declaration of Dr. Kahaleh.  Dr. Fromowitz's testimony was not yet taken at the time that the IPR was instituted. The Board based its final decision, however, on Parasher, Markus and Dr. Fromowitz's testimony.  The fact that the Board evaluated evidence during the course of the proceeding—including the Fromowitz testimony that was not yet generated at the institution phase—and as a result modified its initial reasoning, does not bar the Board from finding the '044 Patent unpatentable.  That the Board found Dr. Fromowitz's testimony more compelling than Dr. Kahaleh's is not a justification for overturning the Board's judgment of unpatentability.  Rather, it is an example of why IPR proceedings include more than just an initial decision.  The Board's finding here is supported by substantial evidence.

### 3.    The Board's Other IPR Decisions Only Confirm Unpatentability

CDx appears to argue that, because some of the '609 and '913 Patents' claims are broader than the '044 Patent claims, this somehow proves the patentability of the '044 Patent.  (Br. at 34.)  Specifically, CDx argues that in the IPRs on the '609 and '913 Patents, the Board found that claim 1 of those patents required, and Parasher taught, "dislodging cells from below the exterior boundary of the epithelium," (*id.* (quoting A24; A62)), whereas the '044 Patent requires that penetration of "at least two epithelial layers" (*id.*).  This argument has no merit.

41

In the IPRs on the '609 and '913 Patents, the Board did not merely find that Parasher taught breaking the upper-most layer of the epithelium. To the contrary, the Board clearly stated that "Parasher's brush not only is capable of dislodging cells from below the surface of the epithelium, but can also penetrate to the submucosa." (A27; A61.) To get to the submucosa, the brush must necessarily pass through all layers of the epithelium, including the superficial, intermediate and basal layers. (*See* A4, figure.) Thus, the Board made the exact same finding regarding Parasher in the IPRs on the '609 and '913 Patents that it made in the IPR on the '044 Patent. (*See* A89.) This finding was necessary because, while the first claim of each of the '609 and '913 Patents only requires reaching below the epithelial surface, later dependent claims in those patents require penetrating through the submucosa. (*See, e.g.*, A490 claim 4 (requiring a disaggregated tissue specimen having "basement membrane fragments, plus elements of the submucosa").)

Despite CDx's arguments, the Board based it decisions on all three IPRs on the exact same teachings from Parasher. Thus, the Board's decisions in the IPRs on the '609 and '913 Patents do not counsel against the same finding of unpatentability in the IPR on the '044 Patent.

E.    **CDx Is Barred Under Doctrine of Collateral Estoppel From Challenging the Board's Factual Findings About Parasher and Dr. Fromowitz's Testimony**

1.    *Summary of Law on Collateral Estoppel*

"Under the doctrine of issue preclusion, also called collateral estoppel, a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). In this regard, collateral estoppel applies to legal rulings and factual findings. *Id.* "The underlying rationale of the doctrine of issue preclusion is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." *Id.* (citations omitted).

In determining whether to apply collateral estoppel, this Court applies a four-factor test focusing on whether: (1) the issue is identical to one decided in another action; (2) the issue was actually litigated in the other action; (3) the resolution of the issue was "essential" to a final judgment in the other action; and (4) there was a "full and fair opportunity" to litigate the issue in the other action. *In re Freeman*, 30 F.3d at 1465.

Courts have applied collateral estoppel in a variety of patent and trademark related cases arising from district court litigation and administrative proceedings,

such as IPR proceedings.[3]  *See B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1299 (2015) (collateral estoppel applied to unappealed prior decision by the Trademark Trial and Appeal Board); *In re Freeman*, 30 F.3d at 1465 (collateral estoppel applied to prior decision by the Board of Patent Appeals and Interferences); *Orenshteyn v. IBM*, 979 F. Supp. 2d 448, 453 (S.D.N.Y. 2013).

In *B&B*, the Supreme Court held that Trademark Trial and Appeal Board ("TTAB") decisions can have preclusive effect when "other ordinary elements of issue preclusion are met, [and] when the usages adjudicated by the TTAB are materially the same as those before the district court." *Id.* at 1310.  In *B&B*, the Supreme Court further found that opposition proceedings at the TTAB are similar to civil actions in a district court because the proceedings are "largely governed by the Federal Rules of Civil Procedure and Evidence," and because the TTAB allows for discovery and depositions.  *Id.* at 1300.

Here, the four part test applies, and collateral estoppel bars CDx's efforts to challenge the Board's factual findings concerning the teachings of Parasher and Dr. Fromowitz's testimony.

---

[3] IPR proceedings, like civil district court proceedings and TTAB proceedings, are governed by the rules of civil procedure and evidence, and allow for discovery and depositions.  *See* 35 U.S.C. § 6 (administrative judges); 37 C.F.R. Part 42 (procedural rules); and 37 C.F.R. §§ 42.51 (discovery) and 42.62 (Federal Rules of Evidence).  Further, the legislative history for IPRs shows that Congress chose not to "alter or interfere with existing principles of res judicata or collateral estoppel."  157 Cong. Rec. S5370 (daily ed. Sept. 7, 2011) (statement of Sen. Kyle).

2. *The Scope and Meaning of the Prior Art Disclosures in Parasher and the Application of Dr. Fromowitz's Testimony to those Disclosures Were at Issue and Were Litigated in All Three IPRs*

In addressing the first prong, courts look to whether the issues decided in the prior litigation were the same as the issue before the court. *In re Freeman*, 30 F.3d at 1465. Courts have recognized that "[i]n the field of patent law, collateral estoppel may apply to patent claims that were not previously adjudicated, because the 'issues litigated, not the specific claims around which the issues were framed' are determinative." *Orenshteyn v. IBM*, 979 F. Supp. 2d 448, 453 (S.D.N.Y. 2013) (citing *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 314 (S.D.N.Y. 2004)). *See also Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1372 (Ct. Cl. 1975). The issues litigated may include factual findings or legal conclusions. *In re Freeman*, 30 F.3d at 1465.

In the IPRs on the '609 and '913 Patents, the Board made factual findings concerning the scope of the prior art disclosures in Parasher and Dr. Fromowitz's interpretation of those disclosures. As reflected in the above table above (*see infra* pp. 20–21), the Board's factual findings in the IPRs on the '609 and '913 Patents are nearly identical to the factual findings made in the IPR in the '044 Patent at issue in this appeal.

For example, in the IPRs on the '609 and '913 Patents, the Board found that:

- The Parasher brush is non-lacerational (A20 & n.23; A54 & n.25);

- Parasher describes its process as "scrape biopsy" (A20; A54);

- Parasher discloses "stiff or semi-rigid" bristles, "not contested" (A21; A55);

- "Parasher is not silent regarding the capabilities of the brush" (A23; A57);

- "Parasher's brush is capable both of collecting cells (cytology) and of collecting a larger (greater) sample of tissue (biopsy) . . . capable of collecting 'scrapings of tissue'" (A23; A57);

- "The specimen obtained by Parasher's brush is an aggregation of cells large enough to be visible to the naked eye. Considering the evidence to this point, Petitioner has shown by a preponderance of the evidence that Parasher's brush obtains such a specimen by dislodging cells from below the exterior boundary of the epithelium" (A24; A58);

- Fromowitz testified that "adjacent tissue" would "have to include the submucosa" (A25; A59);

- Fromowitz: Parasher could penetrate submucosa, "but not reliably so" (A27; A61);

- "Parasher's brush not only is capable of dislodging cells from below the surface of the epithelium, but can also penetrate to the submucosa" (A27; A62).

Each of these factual findings was at issue and fully litigated in the IPRs on the '609 and '913 Patents.  These exact same findings are part of the '044 Patent IPR.  Because the Board decided the exact same issue in the exact same way in all the IPRs, the first factor for collateral estoppel is satisfied.

### 3. *The Scope of Parasher and Fromowitz's Testimony Was Fully Litigated*

The second prong of the four part collateral estoppel test is also satisfied because the scope and meaning of the disclosures in Parasher were fully litigated in the IPRs on the '609 and '913 Patents.  In each of these IPRs, the Board provided a thorough, well-reasoned analysis of Parasher in light of the arguments and expert testimony proffered by both Parties.  Similar to the Supreme Court's holding in *B&B* for TTAB cases, the procedure and process in IPRs affords the parties a full opportunity to litigate.  Like TTAB proceedings, IPR proceedings are also "similar to a civil action in a federal district court" and "largely governed by the Federal Rules of Civil Procedure and Evidence."  *B&B*, 135 S. Ct. at 1300.  In addition, CDx also challenged and made arguments concerning the application of expert testimony, including the testimony of Dr. Fromowitz.

Accordingly, the scope of the teachings of Parasher and application of Dr. Fromowitz's testimony were fully litigated in the IPRs on the '609 and '913 Patents.  The second collateral estoppel factor is met.

4.    *The Meaning of Parasher and Dr. Fromowitz's Testimony Were Central Issues in the IPRs on the '609 and '044 Patents*

The third prong of the four part test is also satisfied.  In all three of the IPRs, the Board relied upon its reading of Parasher to reach the conclusion that the patents were unpatentable.  Parasher's disclosure was certainly the central issue in all three proceedings.

Each of the IPRs turned on the same teachings from Parasher.  In all three, the Board framed the "Contested Aspect" as CDx's contention "that all of the claim elements are not found within the four corners of Parasher, as is required for anticipation, because Parasher is silent regarding obtaining a specimen that includes tissue from below the surface of the epithelium."  (A84.)  (See also A21 (nearly identical); A55 (nearly identical).)  The Board's determination that Parasher discloses obtaining a specimen that includes tissue from below the surface of the epithelium was essential to its judgment of invalidity.  The third factor is met.

5.    *CDx Chose Not Appeal the '609 and '913 IPRs*

For unexplained reasons, CDx chose to dismiss its appeals relating to the '609 and '913 Patents.  There is no dispute that it had "full and fair opportunity" to challenge the findings in those cases and yet chose not to do so, leaving the Board's factual findings concerning Parasher and Dr. Fromowitz as the "law of the case."

48

6.    *The Balance Of Factors Weighs In Favor Of Applying the Collateral Estoppel Doctrine*

Finally, in determining whether to apply collateral estoppel, courts balance the "desire not to deprive a litigant of an adequate day in court" against the "desire to prevent repetitious litigation of what is essentially the same dispute." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994).  While this Court has declined to apply collateral estoppel in certain cases, even where the four part test has been satisfied, the facts of those cases are easily distinguishable from this present action.

For example, this case does not involve a situation where an appellant has appealed from a single action against some, but not all, defendants.  *See Innovad, Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001)  Similarly, this action does not involve a situation where an appellant failed to appeal against one of several defendants in a multi-district litigation.  *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1349 (Fed. Cir. 2008).[4] Further, this action differs from *Innovad* and *Cygnus* because in the underlying litigation between US Endoscopy and CDx: 1) there were three separate and distinct proceedings before

---

[4] In *Innovad*, the appeal arose from a single suit, whereas in *Cygnus*, the Court viewed the multi-district litigation as "a single, multi-defendant lawsuit," rather than a set of distinct actions.  *In re Cygnus*, 536 F.3d at 1349.  The appellant in Cygnus was merely "seeking review of an adverse decision in the first and only case in which the issue has been presented." *Id.* 1350.  The Court also found that policy cautioned against estoppel because a finding of estoppel "would preclude the opportunity of settlement with any party before appeal." *Id.* (quoting *Innovad,* 260 F.3d at 1334).

the PTAB and 2) there is only one opposing party.  Unlike the situation in *Cygnus*,

the '044 Patent IPR is not "the first and only case in which the issue has been

presented."  *In Re Cygnus*, 536 F.3d at 1350.  Rather, the same issue was presented

in two other separate, fully adjudicated proceedings.  Those first and second

proceedings ended when CDx dismissed the appeals.  CDx is now precluded from

pursing the same unsuccessful arguments made there in this third proceeding.

Further, the policy reasons cited in *Innovad* and *Cygnus* do not apply here because

U.S. Endoscopy is the only opposing party in all three cases.

The collateral estoppel test has been met.  As a result, CDx is estopped from

attacking the Board's factual findings of what Parasher discloses.

## CONCLUSION

Parasher expressly teaches a brush that samples through the layers of the epithelium into the submocosa.  CDx's own expert confirmed this.  This was the only contested issue in the IPR, and, based on this evidence, the Board correctly found clams 1–8, 11–17, 23–28, 32 and 35–39 of the '044 Patent anticipated by Parasher and claims 9,10, 19 and 20 obvious over Parasher and Markus.  The Board did not rely on inherency doctrine in its decision because Parasher is "not silent" as to the capabilities of its brush.  To the contrary, it expressly teaches its brushes capabilities.  Also, the claim element "sufficient stiffness" was not contested below, and any related argument is now waived.

Further, CDx's arguments regarding Parasher's Background, the Board's shift from institution to final decision, and alleged differences in the '609 and '913 IPRs have no merit.  Finally, CDx is barred due to collateral estoppel from challenging the Board's findings on Parasher in this case because it voluntarily dismissed its appeals in the '609 and '913 IPRs and left those final judgments intact.

For these reasons, this Court should affirm the Final Written Decision of the Patent Trial and Appeal Board that all reviewed claims are unpatentable.

Dated: April 28, 2016                    Respectfully submitted,

/s/ Todd. R. Tucker
Todd R. Tucker
Mark W. McDougall
Joshua A. Friedman
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH  44114-1607
Telephone: 216-622-8200
Facsimile:  216-241-0816
E-mail: ttucker@calfee.com
            mmcdougall@calfee.com
            jfriedman@calfee.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

      this brief contains <u>11,380</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

Dated: April 28, 2016                    /s/ Todd. R. Tucker
                                         Todd R. Tucker

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on this, the 28th day of April, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES
P.O. Box 1460
Richmond, VA 23218
(804) 249-7770
melissa@gibsonmoore.net